1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NOEL KEITH WATKINS,

11              Petitioner,                    No. CIV S-09-0363 WBS DAD P

12        vs.

13   MIKE KNOWLES, et al.,

14              Respondents.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for four years following his third

19   parole suitability hearing held on May 3, 2006.  Upon careful consideration of the record and the

20   applicable law, the undersigned will recommend that petitioner's application for habeas corpus

21   relief be denied.

22                              PROCEDURAL BACKGROUND

23              Petitioner is confined pursuant to a judgment of conviction entered in the Contra

24   Costa County Superior Court in 1985 on a charge of second degree murder.  (Pet. at 1.)[1]

25   _____

26        [1]  Page number citations such as this one are to the page number reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

1

1   Pursuant to that conviction petitioner was sentenced to twenty years-to-life in state prison.  (Id.)

2        Petitioner's third parole consideration hearing, which is placed at issue by the

3   instant petition, was held on May 3, 2006.  (Id. at 73.)  At that time, petitioner had served more

4   than twenty-three years in prison.  The Board panel found him not suitable for release on parole

5   and denied parole for four years.  (Answer, Ex. 1 (Doc. No. 18-1) at 68.)

6        On September 13, 2007, petitioner challenged the Board's decision in a petition

7   for a writ of habeas corpus filed in the Solano County Superior Court.  (Answer, Ex. 1 (Doc. No.

8   18-1) at 2.)  That petition was denied on the procedural ground that petitioner had failed to

9   support his petition with a "necessary exhibit" - the transcript of his 2006 parole suitability

10  hearing.  (Answer, Ex. 2 (Doc. No. 18-3 at 2-3).)

11       Petitioner subsequently challenged the Board's 2006 decision in petitions for writ

12  of habeas corpus filed in the California Court of Appeal and California Supreme Court.

13  (Answer, Exs. 3 (Doc. No. 18-3 at 5) & 5 ((Doc. No. 18-4 at 2).)  Those petitions were both

14  summarily denied.  (Answer, Exs. 4 (Doc. No. 18-3 at 65) & 6 (Doc. No. 18-6 at 2).)

15                 FACTUAL BACKGROUND

16       At the commencement of petitioner's 2006 parole suitability hearing, the

17  presiding commissioner stated that, in the interests of "justice and brevity," the panel would

18  incorporate the facts of petitioner's crime of conviction as set forth in the probation report.  (Pet.

19  at 78.)  The commissioner did not read the facts into the record and the probation report is not

20  part of the record before this court as presented by the parties.  However, with respect to a

21  previous habeas corpus action filed by petitioner in this court challenging the Board's 2002

22  decision denying him parole, the Board had described the facts of petitioner's crime of

23  conviction as follows:[2]

24  /////

25

26     [2] The court may take judicial notice of its own records.  See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

[O]n July 31st, 1983, Bob Altes, A-L-T-E-S, and Dana Bennett, B-E-N-N-E-T-T, and Greg Garcia went to Noel Watkins house in Oakley at 800 hours to pick up some marijuana. Watkins apparently was a minor drug dealer, was able to readily acquire drugs. When Garcia driving before [sic] made another drug stop where they acquired Valium, they took several Valiums, smoked some weed, and drank a half a pint of Seagram Canadian Whiskey and 7-Up and drove back to Watkins' house to get more weed. Along the way, Garcia was stopped by the Brentwood police for weaving along Highway 4. They later arrived at Watkins' home. Watkins returned to the car with a 25-caliber handgun. Exiting along a dirt road in front of his house, they came upon a pick up truck that flashed his lights for right of way on the road. Garcia's car became stuck in sand at the side of the road. Watkins exited the vehicle, ran towards the vehicle and shot the passenger, David Mosby, —O-S-B-Y, in the face, the bullet driving towards his upper sinus passages into his neck and lodged next to his spinal chord. Mosby's right shoulder suffered nerve damage. He became unconscious and fell out of the truck. Upon seeing Watkins shoot Mosby, Steve Pasley, P-A-S-L-E-Y, exited the truck and took off running. He was shot in the chin at close range. A second bullet caught him in the right shoulder and a third bullet through the lower back penetrating his lung and exiting through his chest. Pasley collapsed and died over a row fence of a neighbor's yard. Watkins then ran home. Altes stated he was unaware that anyone had actually been shot, followed Watkins to his home and found him in the process of re-loading the handgun and his two 22-caliber rifles. Altes tried to convince Watkins not to hurt anyone. Watkins' father took the handgun from him and his mother asked Altes to leave. Police arrived and arrested Watkins without incident. A search of the home revealed a 25-caliber pistol and two loaded rifles, a loaded 10-shot clip, a loaded Winchester 30/30, a photograph album including several photographs of Watkins sporting firearms, including the murder weapon, and a manual entitled the Anarchist's Cookbook.

(Case No. CIV S-06-0685 MCE DAD P, Answer, Ex. 2 at 7-9.)

Petitioner admitted at his 2006 parole suitability hearing that he committed these crimes. (Answer, Exhibit 5 Part 2 (Doc. No. 18-5 at 31).) He explained that he had been "involved in alcohol and drugs" and was under the influence at the time of the shootings. (Id. at 31-32.) He stated that he went out for drinks with a friend prior to the shooting incident; that he ingested Valium, marijuana, and alcohol; and that when he was dropped off at home two men approached him and told him he "had a problem and either come down the street and deal with it or might have to deal with it right there at the house." (Id. at 32-33.) At that point, petitioner

3

1   "went down the street and shot . . . Steven Pasley," even though he "had no hatred or animosity

2   towards Mr. Pasley or family."  (Id. at 33.)  Petitioner stated it was "a really odd incident."  (Id.)

3   He explained to the Board that he fought with Steven Pasley's cousin "three weeks prior" and he

4   believed that was why the two men asked him to come down to the end of the street.  (Id.)

5   Petitioner stated that he acted "erratically," and that he should have simply called the "county

6   sheriffs" or "stayed in."  (Id.)  He explained that when he walked down the street he took a gun

7   with him for safety reasons.  (Id. at 36-37.)  He stated to the Board that he didn't have "a real

8   reason to . . . randomly just start blasting," but that he "just lost it" and acted irrationally because

9   he was young and heavily under the influence of alcohol and drugs.  (Id. at 37.)

10                                          ANALYSIS

11   I.  Standards of Review Applicable to Habeas Corpus Claims

12              A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

13   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

14   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

15   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

16   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

17   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

18   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

19   (1972).

20              This action is governed by the Antiterrorism and Effective Death Penalty Act of

21   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

22   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

23   habeas corpus relief:

24              An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
25              not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
26              claim -

                                                4

1                    (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
2               determined by the Supreme Court of the United States; or

3                    (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
4               State court proceeding.

5   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

6   (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

7   does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

8   of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

9   also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

10   we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

11   error, we must decide the habeas petition by considering de novo the constitutional issues

12   raised.")

13         The court looks to the last reasoned state court decision as the basis for the state

14   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  See also Barker v.

15   Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated

16   a claim, we analyze the last reasoned decision").  If the last reasoned state court decision adopts

17   or substantially incorporates the reasoning from a previous state court decision, this court may

18   consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque,

19   475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the

20   merits but provides no reasoning to support its conclusion, a federal habeas court independently

21   reviews the record to determine whether habeas corpus relief is available under § 2254(d).

22   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167

23   (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's

24   claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not

25   apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052,

26   1056 (9th Cir. 2003).

1  II.  Petitioner's Due Process Claim

2       A.  Description of Claim

3            Petitioner claims that the Board's May 3, 2006 decision finding him unsuitable for

4  parole violated his right to due process.  He argues he has "met all the criteria necessary for

5  parole" and claims the Board members "had made a decision prior to [the] hearing to deny him a

6  parole date."  (Pet. at 4.)  He also argues that the Board's 2006 decision was "biased and

7  improper" because it was based mainly on the facts of his crime of conviction.  (Id. at 5.)

8            The last reasoned state court decision addressing petitioner's current claims is the

9  December 18, 2007 order of the Solano County Superior Court denying petitioner habeas relief

10 on his challenge to the Board's 2006 decision.  As explained above, the Superior Court's denial

11 of petitioner's habeas application was on procedural grounds.  Accordingly, this court will

12 review petitioner's claims de novo.  Nulph, 333 F.3d at 1056.

13      B.  Applicable Legal Standards

14           1.  Due Process in the California Parole Context

15           The Due Process Clause of the Fourteenth Amendment prohibits state action that

16 deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

17 due process violation must first demonstrate that he was deprived of a liberty or property interest

18 protected by the Due Process Clause and then show that the procedures attendant upon the

19 deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

20 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).[3]

21

22 _____
   [3]  In the context of parole proceedings, the "full panoply of rights" afforded to criminal
23 defendants is not "constitutionally mandated" under the federal Due Process Clause.  Jancsek v.
   Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation
24 omitted).  The United States Supreme Court has held that due process is satisfied in the context
   of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity
25 to be heard and, if parole is denied, a statement of the reasons for the denial.  Hayward v.
   Marshall, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting Greenholtz, 442 U.S. at 16).  See
26 also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in
   cases involving parole issues).

                                            6

1        A protected liberty interest may arise from either the Due Process Clause of the

2   United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

3   expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

4   221 (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

5   The United States Constitution does not, of its own force, create a protected liberty interest in a

6   parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981);

7   Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or

8   inherent right of a convicted person to be conditionally released before the expiration of a valid

9   sentence."); see also Hayward v. Marshall, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence

10  of state law establishing otherwise, there is no federal constitutional requirement that parole be

11  granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc).

12  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

13  parole release will be granted' when or unless certain designated findings are made, and thereby

14  gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz,

15  442 U.S. at 12).  See also Allen, 482 U.S. at 376-78; Pearson v. Muntz, 606 F.3d 606, 609 (9th

16  Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a

17  matter of federal law is long established."); Hayward, 603 F.3d 562-63 ("Although the Due

18  Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of

19  future dangerousness, state law may supply a predicate for that conclusion.")

20        In California, a prisoner is entitled to release on parole unless there is "some

21  evidence" of his or her current dangerousness.  Hayward, 603 F.3d at 562 (citing In re Lawrence,

22  44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v.

23  Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle

24  v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ; In re Rosenkrantz, 29

25  Cal.4th 616, 651-53 (2002).   Therefore, "California's parole scheme gives rise to a cognizable

26  liberty interest in release on parole."  Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

7

902).  This liberty interest is enforceable under the federal Due Process Clause pursuant to

clearly established federal law.  Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010);

Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some

evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson,

606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is

enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan

v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010)

(McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for

compliance with California's 'some evidence' rule, Hayward holds that California state

constitutional law creates a cognizable interest in parole absent 'some evidence' of

dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter

of clearly established federal law.")

> 2.  California's Statutes and Regulations on Parole

When a federal court assesses whether a state parole board's suitability

determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the

state regulatory, statutory, and constitutional law that governs parole suitability determinations in

California."  Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62).  The setting of a

parole date for a California state prisoner is conditioned on a finding of suitability.  Cal. Penal

Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The state regulation that governs parole

suitability findings for life prisoners states as follows with regard to the statutory requirement of

California Penal Code § 3041(b):  "Regardless of the length of time served, a life prisoner shall

be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, §

2281(a).  In California, the overriding concern in determining parole suitability is public safety.

In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005).  This "core determination of 'public safety' . . .

involves an assessment of an inmates *current* dangerousness."  In re Lawrence, 44  Cal. 4th at

1  1205 (emphasis in original).  Accordingly,

2      when a court reviews a decision of the Board or the Governor, the
       relevant inquiry is whether some evidence supports the decision of
3      the Board or the Governor that the inmate constitutes a current
       threat to public safety, and not merely whether some evidence
4      confirms the existence of certain factual findings.

5  Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

6  and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)).  "In short, 'some evidence' of future

7  dangerousness is indeed a state *sine qua non* for denial of parole in California."  Pirtle, 611 F.3d

8  at 1021 (quoting Hayward, 603 F.3d at 562).  See also Cooke, 606 F.3d at 1214.[4]

9          Under California law, prisoners serving indeterminate prison sentences "may

10 serve up to life in prison, but they become eligible for parole consideration after serving

11 minimum terms of confinement."  In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally

12 sets a parole release date one year prior to the inmate's minimum eligible parole release date, and

13 does so "in a manner that will provide uniform terms for offenses of similar gravity and

14 magnitude in respect to their threat to the public."  In re Lawrence, 44 Cal. 4th at 1202 (citing

15 Cal. Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that the

16 gravity of the current convicted offense or offenses, or the timing and gravity of current or past

17 convicted offense or offenses, is such that consideration of the public safety requires a more

18 lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal.

19 Penal Code § 3041(b).  In determining whether an inmate is suitable for parole, the Board must

20

21      [4] As the Ninth Circuit has explained, the "some evidence"

22      requirement imposes substantive rather than purely procedural
        constraints on state officials' discretion to grant or deny parole: "a
23      reviewing court . . . is not bound to affirm a parole decision merely
        because the Board or the Governor has adhered to all procedural
24      safeguards."  In re Lawrence, 44 Cal.4th [at 1210].  Rather the
        court must ensure that the decision to deny parole is "supported by
25      some evidence, not merely by a hunch or intuition."  Id. [at 1212].

26 Cooke, 606 F.3d at 1213-14.

9

1  consider all relevant, reliable information available regarding

2      the circumstances of the prisoner's social history; past and present
3      mental state; past criminal history, including involvement in other
    criminal misconduct which is reliably documented; the base and
4      other commitment offenses, including behavior before, during and
    after the crime; past and present attitude toward the crime; any
5      conditions of treatment or control, including the use of special
    conditions under which the prisoner may safely be released to the
    community; and any other information which bears on the
6      prisoner's suitability for release.

7  Cal. Code Regs., tit. 15, § 2281(b).  However, "there must be more than the crime or its

8  circumstances alone to justify the Board's or the Governor's finding of current dangerousness."

9  Cooke, 606 F.3d at 1214.  See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and

10  regulatory mandate to normally grant parole to life prisoners who have committed murder means

11  that, particularly after these prisoners have served their suggested base terms, the underlying

12  circumstances of the commitment offense alone rarely will provide a valid basis for denying

13  parole when there is strong evidence of rehabilitation and no other evidence of current

14  dangerousness.")

15      The regulation identifies circumstances that tend to show suitability or

16  unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances

17  are identified as tending to show that a prisoner is suitable for release:  the prisoner has no

18  juvenile record of assaulting others or committing crimes with a potential of personal harm to

19  victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has

20  performed acts that tend to indicate the presence of remorse or has given indications that he

21  understands the nature and magnitude of his offense; the prisoner committed his crime as the

22  result of significant stress in his life; the prisoner's criminal behavior resulted from having been

23  victimized by battered women syndrome; the prisoner lacks a significant history of violent crime;

24  the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic

25  plans for release or has developed marketable skills that can be put to use upon release;

26  /////

1   institutional activities indicate an enhanced ability to function within the law upon release.  Id., §

2   2281(d).

3                  The following circumstances are identified as tending to indicate unsuitability for

4   release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

5   the prisoner had a previous record of violence; the prisoner has an unstable social history; the

6   prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

7   problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

8   2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

9   especially heinous, atrocious, or cruel manner include:  multiple victims were attacked, injured,

10  or killed in the same or separate incidents; the offense was carried out in a dispassionate and

11  calculated manner, such as an execution-style murder; the victim was abused, defiled or

12  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

13  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

14  or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

15                 In the end, under state law as clarified by the California Supreme Court,

16         the determination whether an inmate poses a current danger is not
           dependent upon whether his or her commitment offense is more or
17         less egregious than other, similar crimes.  (Dannenberg, supra, 34
           Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
18         dependent solely upon whether the circumstances of the offense
           exhibit viciousness above the minimum elements required for
19         conviction of that offense.  Rather, the relevant inquiry is whether
           the circumstances of the commitment offense, when considered in
20         light of other facts in the record, are such that they continue to be
           predictive of current dangerousness many years after commission
21         of the offense.  This inquiry is, by necessity and by statutory
           mandate, an individualized one, and cannot be undertaken simply
22         by examining the circumstances of the crime in isolation, without
           consideration of the passage of time or the attendant changes in the
23         inmate's psychological or mental attitude. [citations omitted].

24  In re Lawrence, 44 Cal. 4th at 1221.  See also In re Shaputis, 44 Cal. 4th at 154-55.  Accordingly,

25  below the court considers whether the Board's decision to deny parole in this case violated

26  petitioner's right to due process.

C. <u>Board Decision</u>

In addressing the factors it considered in reaching its decision that petitioner was unsuitable for parole, the Board in this case stated, in relevant part, as follows:

> PRESIDING COMMISSIONER BRYSON: . . . Sir, the panel
> reviewed all information from the public and relied on the
> following circumstances in your matter – in the matter of Noel
> Watkins, and concluded that you're not suitable for parole and
> would pose an unreasonable risk of danger to society or a threat to
> public safety if released from prison.  The offense – offense was
> carried out in an especially cruel and callous manner in that victims
> Moseby and Pasley were unarmed, no threat to you, exiting their
> pickup initially to assist your vehicle.  Multiple victims were
> attacked, injured and killed in the same incident.  Moseby was shot
> once in the face while running away.  Pasley was shot three times
> at close range.  The offense was carried out in a dispassionate and
> calculated manner in that you were armed and did not hesitate to
> fire upon two individuals who had approached to assist freeing
> your truck from aggregate on a road shoulder.  The offense was
> carried out in a manner demonstrating exceptionally callous
> disregard for human suffering.  The bullet that hit Moseby knocked
> out two rear molars, punctured a hole in his sinuses, then became
> permanently lodged next to his spinal cord, causing substantial
> nerve damage.  He then fell to the ground, losing consciousness.
> One shot hit Pasley on the right side of his chin, another hit the
> back of his right shoulder.  The third shot entered the lower back,
> traveled up his upper torso, injuring the right lung, then exiting
> through the chest.  Pasley managed to make it to the front yard of
> the home, where he collapsed over a rope – roped fence and died.
> Sir, you have a – a record of prior criminality involving weapons
> and drugs.  You were by your own – your own testimony a heavy
> boozer on the streets.  Alcohol was a factor in this life crime as
> well as poly-substance abuse –
>
> INMATE WATKINS:  Yes, ma'am.
>
> PRESIDING COMMISSIONER BRYSON:  – which you have
> admitted.  As to your institutional behavior, you've programmed in
> a limited manner, attributed in large part to your medical condition,
> and we note that you do – do have a GED which was obtained in
> '92, and you do have some college work; however, your
> Classification Score is still very high, it's 101, and you have not
> sufficiently participated in vocations and self-help therapy, and, sir,
> with someone of your background, AA would – or NA would be
> very important.  You've had very limited participation in the self-
> help groups, and the panel would be recommending that you do
> participate in these self-help groups.  As to your misconduct, you
> have 18 115s, the last in 2002, for failure to attend, and 15 128a's.
> So although you do have a clear period from 2002 to the present, it

1    is fairly recent, and you are starting to show a turnaround in your
     behavior in prison.  As to the psychological report dated April
2    27th, 2006, by Dr. Saunders, the Global Assessment of
     Functioning is low, it's 60, and Dr. Saunders show – shows a low
3    to moderate likelihood of your becoming involved in a violent
     offense if released into the community.  We do commend you on
4    your parole plans.  They appear to be very solid, in order, and
     documented, and I would recommend to you that you make sure
5    that you keep updating these as you go –

6    INMATE WATKINS:  Uh-huh.

7    PRESIDING COMMISSIONER BRYSON:  – and – because they
     – they do appear realistic, both for residential and employment
8    plans in California.  As to Penal Code 3042 responses, the Dist –
     responses indicate opposition to finding of parole suitability,
9    specifically by the District Attorney of Contra Costa County.  In a
     separate decision, the hearing panel finds it's not reasonable to
10   expect that parole would be granted at a hearing during the
     following four years.  Specific reasons for this finding are as
11   follows:  Sir, this was a horri – horrific crime, and today you
     appear to still be somewhat shifting the blame to the victims by
12   inferring that you had threats and that they – previous to your
     crime, you were claiming that they threatened you and that they
13   probably had weapons.  There's no indication of that in any of the
     evidence that's been presented to this panel.  Moreover, the motive
14   for your crime remains inexplicable.  It's reportedly aggravated by
     drugs and alcohol, but, sir, this was your crime.  Also, you
15   committed offenses after (indiscernible) while out on bail for the
     instant offense.  You were arrested for DUI driving under the
16   influence – driving under a revoked or suspended license, carrying
     a concealed weapon in the vehicle, carrying a loaded firearm in a
17   public place, and possession of controlled substance, where during
     the search of your vehicle police found a .22 caliber rifle and two
18   zip-lock bags containing a controlled substance, and then in prison
     you were arrested for possession of inmate-manufactured stabbing
19   device, a dangerous property.  Your gains, sir, appear to be recent,
     and you do need additional time to ensure you maintain those . . .
20
     In denying you parole for four years, we're placing you on the 2010
21   calendar for your next Subsequent Hearing.  If this decision is
     final, you will not get parole. . .  The Board recommends no more
22   115s or 128a's, work to reduce your Classification Score –

23   INMATE WATKINS:  Okay.

24   PRESIDING COMMISSIONER BRYSON:  – get self-help, learn
     a trade, get therapy, and earn positive chronos.  And sir, I wish you
25   good luck.

26   INMATE WATKINS:  I was –

1    PRESIDING COMMISSIONER BRYSON:  Is – Commissioner Filangeri, do you have anything to add?

2

3    DEPUTY COMMISSIONER FILANGERI:  Yes, I'd like to add a couple words, thank you.  I agree with most everything Commissioner Bryson said, except for the realistic parole plans.

4    They – they certainly are organized, but any thought to your working upon release seems unrealistic to me, given – given your total medically disabled status in prison and your lack of

5    programming over the past – over a decade.

6

7    INMATE WATKINS:  Yeah.

8    DEPUTY COMMISSIONER FILANGERI:  One of two things – two things are – are going on: either you're going to have to get past this total medically disabled –

9

10   INMATE WATKINS:  Uh-huh.

11   DEPUTY COMMISSIONER FILANGERI:  – for your parole plans to become realistic –

12   INMATE WATKINS:  Yes.

13   DEPUTY COMMISSIONER FILANGERI:  – or you're going to have to give up the idea of working when you're out there, and I'd

14   – I'd prefer the – the former –

15   INMATE WATKINS:  Right.

16   DEPUTY COMMISSIONER FILANGERI:  – because it means you can participate in more stuff –

17   INMATE WATKINS:  Right.

18

19   DEPUTY COMMISSIONER FILANGERI:  – and – and you need to participate, because everything you participate in makes a better argument for your suitability; you improve your argument. . .

20

21   I want to commend you for getting your GED in '92 and your college units in '92, but that means that you haven't had any educational upgrading in over ten years, and you certainly have the

22   wherewithal to do that based on your academic advancement scores.  The psych report was not supportive of release on several –

23   on several dimensions.

24   INMATE WATKINS:  Uh-huh.

25   /////

26   /////

14

1    DEPUTY COMMISSIONER FILANGERI:  You're going to have
     to work on that.  And I think that's about it.  Thanks.

2

3  (Answer, Ex. 10 (Doc. No. 18-6 at 20-27).)

4        D.  Discussion

5        After taking into consideration the applicable legal standards discussed herein,

6  and for the reasons set forth below, this court concludes that petitioner is not entitled to federal

7  habeas relief with respect to his due process challenge to the Board's 2006 decision denying him

8  parole.  The Board's decision that petitioner was unsuitable for parole at that time and that his

9  release would unreasonably endanger public safety was supported by "some evidence" that bore

10 "indicia of reliability."  Jancsek, 833 F.2d at 1390.

11       One of the factors relied on by the Board to find petitioner unsuitable for parole in

12 2006 was the unchanging circumstances of his crime of conviction.  According to the decisions

13 discussed above, the commitment offense can constitute "some evidence" to support the Board's

14 unsuitability finding only as long as it is still relevant to a determination of the inmate's current

15 dangerousness.  Specifically, "the circumstances of a commitment offense cannot constitute

16 evidentiary support for the denial of parole 'unless the record also establishes that something in

17 the prisoner's pre-or post-incarceration history, or his or her current demeanor and mental state,

18 indicates that the implications regarding the prisoner's dangerousness that derive from his or her

19 commission of the commitment offense remain probative to the statutory determination of a

20 continuing threat to public safety.'"  Cooke, 606 F.3d at 1216 (citing Lawrence, 44 Cal.4th at

21 1214).  In this case, petitioner's prior criminal history, his post-incarceration history, and his

22 demeanor at the suitability hearing all support the Board's finding that his commitment offense

23 remained probative of his current dangerousness.

24       It appears from the record that two factors contributing to petitioner's offense

25 conduct were substance abuse and poor impulse control.  The Board noted that while petitioner

26 was out on bail in connection with the commitment offense, he was arrested for driving under the

15

1    influence, carrying a concealed weapon in the vehicle and possession of a controlled substance.

2    (Answer, Ex. 10 (Doc. No. 18-6 at 24).)  The Board also noted that petitioner had only

3    sporadically participated in Alcoholics Anonymous while in prison, even though alcohol and

4    drug abuse were a highly significant factor in his commitment offense.  Under these

5    circumstances, the Board's conclusion that petitioner's problems with substance abuse and poor

6    impulse control had not yet been resolved was supported by the record.  Moreover, during the

7    2006 parole hearing petitioner was largely unable to explain why he had shot the unarmed

8    victims, other than to say it must have been because he was young, impulsive and under the

9    influence of alcohol and drugs.  Petitioner was unable to express a motive or a coherent reason

10   for his commission of these crimes.  As noted by the Board, he also appeared to place some of

11   the blame for the crimes on the victims despite the lack of evidence to support that view.  The

12   Board also noted petitioner's numerous prison disciplinary convictions, including an arrest for

13   possession of an inmate-manufactured stabbing device, with the latest prison disciplinary

14   conviction being in 2002.  (Answer, Ex. 10 (Doc. No. 18-6) at 22.)  In light of these facts

15   concerning petitioner's pre and post-incarceration history and his demeanor at the hearing, the

16   Board's conclusion that there was a nexus between the unchanging circumstances of petitioner's

17   crime of conviction and his continuing dangerousness in 2006 is supported by the record.

18          The Board also noted that, while petitioner had made positive strides in prison, his

19   gains appeared to be recent.  Petitioner's 2006 psychiatric report confirmed that petitioner had

20   made positive strides in attitude, behavior, and discipline in "the last few years."  (Answer, Ex. 1

21   Part 2 (Doc. No. 18-2) at 12.)  The presiding commissioner noted that petitioner had not

22   sufficiently participated in "self-help and therapy," and observed that with petitioner's

23   background, AA and NA "would be very important."  (Answer, Ex. 10 (Doc. No. 18-6) at 22.)

24   Petitioner also conceded that he had not attended AA since October 2005, because he "just

25   wanted to give it a break," and that he had attended only sporadically in the years 2002 through

26   2005 because of problems with his arthritis.  (Answer, Ex. 5 Part 2 (Doc. No. 18-5 at 68 and 69-

1   70).)  Petitioner also agreed with the 2006 panel members that he had not engaged in other

2   organized forms of self-help since 2002.  (Id. at 69.)  All of these factors support the Board's

3   ultimate conclusion that petitioner was not yet suitable for release on parole in 2006 because his

4   personal gains were only recent.

5          Commissioner Filangeri noted that petitioner's most recent psychological

6   evaluation "was not supportive of release on . . . several dimensions."  (Answer, Ex. 10 (Doc.

7   No. 18-6 at 270.)  The record supports this conclusion.  While the psychologist who interviewed

8   petitioner found that he posed a "low to moderate likelihood to become involved in a violent

9   offense if released to the community," he also noted that:

10              Mr. Watkins's risk of violence seems to be associated with, one,
                severe substance dependence history, two, an unrealistic view of
11              the risks associated with relapse, and once placed into the
                community, showing an inconsistent pattern of using recovery
12              resources that are available to him.  He minimizes his substance
                abuse risk factors.  His level of insight about precursors and
13              triggers to violence is moderate and not well organized.

14   (Answer, Ex. 5 Part 2 (Doc. No. 18-5 at 76-77); Ex. 1 Part 2 (Doc. No. 18-2 at 12).)  The Board's

15   recommendation that petitioner "get therapy" is also supported by the 2006 psychosocial

16   assessment report, which concluded that petitioner should "focus in therapy and self-

17   improvement groups on coping, abstinence, symptom management and risk management skills."[5]

18   (Answer, Ex. 1 Part 2  (Doc. No. 18-2 at 13).)

19          The factors relied on by the Board to find petitioner unsuitable for parole are

20   supported by the record and constitute "some evidence" supporting that decision.  This is true

21   even though petitioner may have a place to live and job prospects upon release from prison, and

22   notwithstanding other factors indicating that he may be suitable for release.  Because the Board's

23   2006 decision that petitioner still posed a current danger to society was supported by "some

24

25          [5] The report also noted that because individual therapy and group therapy are "generally
     unavailable to the general population," petitioner would have to attend "AA/NA" and participate
26   in a "vocational activity" in order to achieve these goals.  (Answer, Ex. 1 Part 2 (Doc. No. 18-2 at
     13).)

1   evidence" in the record, petitioner is not entitled to federal habeas relief on his claim that the

2   Board's failure to find him suitable for parole at the May 3, 2006 suitability hearing violated his

3   right to due process.

4            Petitioner's claim that the Board had already decided he was unsuitable for parole

5   before the suitability hearing began is based on Commissioner Bryson's statement that "in a

6   separate decision, the hearing Panel finds that the prisoner has been convicted of murder and it's

7   not reasonable to expect that parole would be granted at a hearing during the following four

8   years." (Answer, Ex. 1 (Doc. No. 18-1 at 65).)  Petitioner is mistaken as to the import of this

9   statement.  It is clear that Commissioner Bryson did not mean the panel had separately, or

10  previously, decided that petitioner was not suitable for parole.  Rather, the Commissioner was

11  merely explaining, as required, that the determination that petitioner's next parole suitability

12  hearing would not be held for another four years was a "separate decision" from the Board's

13  decision that petitioner was unsuitable for parole.  See Sesma v. Hernandez, No. 07CV0539

14  WQH (JMA), 2007 WL 3243853, at *14 (S.D. Cal. Oct. 30, 2007) ("[A] BPH panel may issue a

15  [multi-year] denial based on the same factors as it based suitability as long as it is clear from the

16  record that the issue was considered separately."); In re Lugo, 164 Cal. App. 4th 1522, 1537

17  (2008).[6]

18            Finally, to the extent petitioner is arguing the Board's failure to find him suitable

19  for parole in 2006 violated state laws or regulations, his claims lack merit.  Any argument that

20  the state court has erred in applying state law are not cognizable in this federal habeas corpus

21  proceeding.  See Wilson v. Corcoran, ___ U.S. ___, 131 S. Ct. 13, 16 (2010); Rivera v. Illinois,

22  ────────────────────

23       [6]  Likewise, any claim that petitioner's due process rights were violated by the Board's
     denial of parole for a four-year period would also fail since there is no authority to support such a
24   claim.  See Asgari v. Cullen, No. CV 09-1830-JSL (AJW), 2010 WL 4916589, at *4 (C.D. Cal.
     Oct. 25, 2010) (because no case has held that a multi-year deferral by the Board is a violation of
25   federal due process rights, at best a challenge to a multi-year denial of parole alleges only a
     violation of state law and does not present a cognizable claim for purposes of federal habeas
26   review); Edwards v. Curry, No. C 08-1923 CW, 2009 WL 1883739, at *8 (N.D. Cal. June 30,
     2009).

18

1   ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of

2   due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire,

3   502 U.S. 62, 67, 72-73 (1991)).

4   III.  Request for Evidentiary Hearing

5          Petitioner has also requested an evidentiary hearing on his due process claim.

6   (Pet. at 52.)  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

7   following circumstances:

8          (e)(2) If the applicant has failed to develop the factual basis of a
          claim in State court proceedings, the court shall not hold an
9          evidentiary hearing on the claim unless the applicant shows that-

10              (A) the claim relies on-

11              (i) a new rule of constitutional law, made retroactive to cases on
              collateral review by the Supreme Court, that was previously
12              unavailable; or

13              (ii) a factual predicate that could not have been previously
              discovered through the exercise of due diligence; and

14

15              (B) the facts underlying the claim would be sufficient to establish
              by clear and convincing evidence that but for constitutional error,
              no reasonable fact finder would have found the applicant guilty of
16              the underlying offense[.]

17          Under this statutory scheme, a district court presented with a request for an

18   evidentiary hearing must first determine whether a factual basis exists in the record to support a

19   petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v.

20   Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166

21   (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner

22   requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

23   for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v.

24   Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th

25   Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts

26   which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998)

1  (internal quotation marks and citation omitted).

2          The court concludes that no additional factual supplementation is necessary in this

3  case and that an evidentiary hearing is not appropriate with respect to the due process claim

4  raised in the instant petition.  The facts alleged in support of these claims, even if established at a

5  hearing, would not entitle petitioner to federal habeas relief.  Therefore, petitioner's request for

6  an evidentiary hearing should be denied.

7                                        CONCLUSION

8          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

9  a writ of habeas corpus and request for an evidentiary hearing be denied.

10          These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

12  one days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within fourteen days after service of the objections.  Failure to file

16  objections within the specified time may waive the right to appeal the District Court's order.

17  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

18  1991).

19          In any objections he may elect to file petitioner may also address whether a

20  certificate of appealability should issue in the event he files an appeal of the judgment in this

21  case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or

22  deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward,

23  603 F.3d at 554 (prisoners are required to obtain a certificate of appealability to review the denial

24  /////

25  /////

26  /////

                                        20

1   of a habeas petition challenging an administrative decision such as the denial of parole by the

2   parole board).

3   DATED: December 8, 2010.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE
7   DAD:8
    watkins363.hc
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

21